LIPEZ, Circuit Judge.
This case concerns a company’s effort to enforce an arbitration clause contained in a job application against an unsuccessful applicant. Appellee Ann Gove filed suit against Career Systems Development Corporation (“CSD”) alleging that she was denied a position because of her gender and pregnancy at the time of her application. CSD moved to compel arbitration pursuant to an arbitration clause in Gove’s job application, but was rebuffed by the district court. The court concluded that the arbitration clause was ambiguous as to whether disputes between CSD and applicants who were not hired were covered, and that this ambiguity must be construed against CSD.
We affirm the judgment, albeit on somewhat different reasoning.
I.
CSD’s motion to compel arbitration was made in connection with a motion to dismiss or stay. Accordingly, the following recitation of the facts is drawn from Gove’s complaint as well as documents submitted to the district court in support of CSD’s motion to compel arbitration. The facts are undisputed.
In May 2008, Gove began working for the Training & Development Corp. (“TDC”), a job training and placement organization, which had a contract to provide services to the Loring Job Corps (“Lor *3 ing”), a technical career training program. In early April 2009, TDC employees were informed that CSD had been awarded the Loring contract and that, beginning May 1, 2009, it would be providing the services previously furnished by TDC. During the transition period, CSD offered all TDC employees currently placed at Loring the opportunity to apply for jobs. Gove chose to do so and, on April 8, 2009, she completed an online application for a position with CSD similar to the one that she held with TDC.
The final section of the application included the following provision:
CSD also believes that if there is any dispute between you and CSD with respect to any issue prior to your employment, which arises out of the employment process, that it should be resolved in accord with the standard Dispute Resolution Policy and Arbitration Agreement (“Arbitration Agreement”) adopted by CSD for its employees. Therefore, your submission of this Employment Application constitutes your agreement that the procedure set forth in the Arbitration Agreement will also be used to resolve all pre-employment disputes. A copy of that procedure is on display in our employment office and a copy [of the] Arbitration Agreement setting forth that procedure will be provided to you.
If you have any questions regarding this statement and the Arbitration Agreement, please ask a CSD representative before acknowledging, because by acknowledging, you acknowledge that you have received a copy of the Arbitration Agreement and agree to its terms. Do not check the Accept box below until you have read this statement.
Directly following this provision was the statement “I accept the terms of the above agreement: □ Accept.” Gove placed a checkmark in the “accept” box and submitted her job application to CSD.
On April 21, Gove was interviewed by representatives of CSD. At the time, she was visibly pregnant and due to deliver on May 30. During the interview, she was asked “How much longer do you have?” She replied that she was due in about five weeks. When Gove was also asked whether she had any other children, she informed the interviewer that she had a seven-year-old son.
Gove was not hired by CSD, although CSD continued to have a need for the position she had applied for and continued to advertise for the position. Subsequently, Gove filed a complaint with the Maine Human Rights Commission (“MHRC”), which found reasonable grounds to conclude that she was denied the position because of her pregnancy. After the MHRC was unable to persuade the parties to reach a conciliation agreement, Gove filed suit in the United States District Court for the District of Maine, alleging that CSD discriminated against her on account of her gender and her pregnancy in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, and the Maine Human Rights Act, Me.Rev.Stat. tit. 5, §§ 4551-4634. CSD moved to compel arbitration, arguing that Gove was bound by the arbitration clause in the job application. The district court, however, found that the arbitration clause was not valid. It reasoned that the provision was ambiguous as to whether it covered an applicant such as Gove, who was never hired, and concluded that such an ambiguity must be construed against CSD, the drafter of the agreement. CSD now brings this interlocutory appeal challenging the district court’s decision.[1]
*4 II.
Wé review both the interpretation of arbitration agreements and orders compelling arbitration (or declining to do so) de novo. Dialysis Access Ctr., LLC v. RMS Lifeline, Inc., 638 F.3d 367, 373 (1st Cir.2011) (citing South Bay Bos. Mgmt., Inc. v. Unite Here, Local 26, 587 F.3d 35, 42 (1st Cir.2009)). Therefore, we may affirm the district court’s order “on any independent ground made manifest by the record.” Soto-Fonalledas v. Ritz-Carlton San Juan Hotel Spa & Casino, 640 F.3d 471, 474 (1st Cir.2011) (internal quotation mark omitted).
In deciding a motion to compel arbitration, a court must ascertain whether: “(i) there exists a written agreement to arbitrate, (ii) the dispute falls within the scope of that arbitration agreement, and (iii) the party seeking an arbitral forum has not waived its right to arbitration.” Combined Energies v. CCI, Inc., 514 F.3d 168, 171 (1st Cir.2008). As the Supreme Court has explained, it is a “fundamental principle that arbitration is a matter of contract.” Rent-A-Center, West, Inc., v. Jackson, — U.S. -, 130 S.Ct. 2772, 2776, 177 L.Ed.2d 403 (2010). Accordingly, “principles of state contract law control the determination of whether a valid agreement to arbitrate exists.” Soto-Fonalledas, 640 F.3d at 475 (internal quotation marks omitted).
In this case, the parties agree that Maine law governs. Under Maine law,
[a] contract exists if the parties mutually assent to be bound by all its material terms, the assent is either expressly or impliedly manifested in the contract, and the contract is sufficiently definite to enable the court to ascertain its exact meaning and fix exactly the legal liabilities of each party.
Sullivan v. Porter, 861 A.2d 625, 631 (Me. 2004). Additionally, “[a] contract is to be interpreted to effect the parties’ intentions as reflected in the written instrument, construed with regard for the subject matter, motive, and purpose of the agreement, as well as the object to be accomplished.” V.I.P., Inc. v. First Tree Dev. Ltd. Liab. Co., 770 A.2d 95, 96 (Me.2001) (internal quotation marks omitted).
 The Maine Law Court has applied to arbitration clauses the “bedrock rule of contract interpretation ... that ambiguities in a document are construed against its drafter.” Barrett v. McDonald Invs., Inc., 870 A.2d 146, 150-51 (Me.2005). This rule is intended to effectuate the intent of the parties, and is based on the “presum[ption] that [the drafter] will not leave undeclared that which he would claim as his right under the agreement.” Id. at 150 (quoting Monk v. Morton, 139 Me. 291, 30 A.2d 17, 19 (1943)). Language in a contract is ambiguous “if it is reasonably susceptible to different interpretations.” Champagne v. Victory Homes, Inc., 897 A.2d 803, 805 (Me.2006).
The Law Court has explained that “[t]he rationale for interpreting ambiguities against the drafter is particularly compelling in contracts where one party had little or no bargaining power.” Barrett, 870 A.2d at 150. Thus, where the parties are in unequal bargaining positions, such as “[w]here a standard-form, printed contract is submitted to the other on a ‘take it or leave it’ basis, upon equitable principles *5 the provisions of the contract are generally construed to meet the reasonable expectations of the party in the inferior bargaining position.” Id. (internal quotation marks omitted).
III.
The parties present dueling interpretations of the arbitration clause at issue. As a preliminary matter, we must determine whether this dispute goes to the existence of a valid arbitration agreement between the parties or merely the scope of any such agreement. The district court found that the validity of the agreement itself was called into question. Gove v. Career Sys. Dev. Corp., 824 F.Supp.2d 205, 211 (D.Me.2011). We take a different view. Gove does not dispute that if she had been hired, she would have been obligated to arbitrate disputes stemming from events that occurred prior to her employment. Thus, she is arguing that her employment by CSD is a condition precedent to her obligation to arbitrate. However, the non-occurrence of a condition precedent does not render an agreement invalid. It simply means that the duty to perform does not arise. See Hope Furnace Assocs., Inc. v. F.D.I.C., 71 F.3d 39, 43 (1st Cir.1995); Restatement (Second) of Contracts § 224 cmt. c (1981). Furthermore, although Gove ostensibly defends the court’s conclusion that there is no valid agreement, her briefing belies this defense when she acknowledges that “[the arbitration clause] does not reach a non-employee’s application for employment, but only disputes the hired employee has that arise out of her application.” Thus, she concedes that the agreement is enforceable in certain circumstances. This concession was apt. This is a dispute concerning the scope of the arbitration clause, not its validity.
Normally, in evaluating the scope of an arbitration agreement, we would give significant weight to the federal policy favoring arbitration and the presumption of arbitrability.[2] See Dialysis Access Ctr., 638 F.3d at 376. However, on appeal, CSD has not argued this federal policy, confining itself instead to arguments of contract interpretation under Maine law. This omission is especially telling because CSD emphasized the federal policy favoring arbitration in its briefing to the district court. See SEC v. Tambone, 597 F.3d 436, 441 (1st Cir.2010) (noting that arguments made before a district court, but not pursued on appeal, are deemed abandoned); United States v. Capozzi, 486 F.3d 711, 719 n. 2 (1st Cir.2007) (“We have consistently held that arguments not raised in the initial appellate legal brief are considered waived.”). CSD does mention the federal policy in a block quote in its initial appellate brief, but it makes no argument based on this policy. We have explained that it is a “ ‘settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.’ ” *6 United States v. Hughes, 211 F.3d 676, 684 n. 6 (1st Cir.2000) (quoting United States v. Zannino, 895 F.2d 1, 17 (1st Cir.1990)). The absence of any argument on the federal policy favoring arbitration is consistent with CSD’s explicit disavowal-of any reliance on rules of construction. After arguing exclusively that the provision is not ambiguous, it concludes its argument concerning the scope of the arbitration clause by asserting' that “there is no need to resort to the various rules of construction when the plain language of the agreement is unambiguous.” Because CSD has not relied on federal law or explained the interaction of the federal policy favoring arbitration with Maine contract law, we will not consider arguments based on the federal policy that it chose not to make.[3]
Turning to Maine law, we must determine whether the arbitration clause is ambiguous in its coverage of applicants who are not hired. CSD argues that the clause unambiguously covers all disputes between it and applicants for employment. It asserts that “the term ‘pre-employment’ is widely understood to refer to the period of time between the submission of an application and hiring, whether or not someone is hired,” and that “employment process” refers to every step of the potential employment relationship between Gove and itself. It also argues that arbitration clauses are subject to broad interpretation as a matter of Maine law.
In contrast, Gove argues that the clause’s references to the “employment process” and “pre-employment disputes” should be read literally. Under her reading, if one is never employed by CSD, then a dispute cannot be “pre-employment” or related to the “employment process,” and the arbitration clause is inapplicable. Gove argues that this reading is particularly appealing to a lay person to whom the phrase “employment process” “clearly meant the process culminating in her hire, a process from which she never benefit-ted.” See Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co., 267 F.3d 30, 34 (1st Cir.2001) (noting that under Maine law “[a]mbiguity [of a contract] is to be determined from the perspective of an ordinary or average person”).
Importantly, nothing in the arbitration clause refers to “applicants.” Instead, every reference is to “your employment,” “the employment process,” or “pre-employment disputes.” Accordingly, there is a reasonable basis for Gove’s belief that she would only be bound by the arbitration clause if ultimately hired. Then, if she had post-hire claims arising out of promises made or actions taken during the hiring process (e.g., claims that she was being paid less or given fewer hours than she had been led to believe, or claims that similarly situated male employees were hired to more favorable positions or awarded a higher pay rate), she would be obligated to pursue those claims in an *7 arbitral forum. This reading is consistent with both the arbitration clause in Gove’s application and the incorporated Pre-Dispute Arbitration Policy, which identifies covered disputes as including, inter alia, “[a]ll disputes and claims which arise out of or relate in any manner to the Employee’s application for employment or employment with the Company.” (Emphasis added.) Thus, it can be fairly said that the agreement is susceptible to different interpretations. See Champagne, 897 A.2d at 805.
In Johnson v. Circuit City Stores, 148 F.3d 373 (4th Cir.1998), the Fourth Circuit considered the enforceability of a dispute resolution agreement compelling arbitration. That case also involved an unsuccessful applicant who sought to avoid an arbitration clause contained in a job application. Although the central issue in Johnson was whether there was adequate consideration supporting the agreement, and not the issue before us now, the case features an agreement that unambiguously binds job applicants. There, the agreement required that the applicant accept the statement “I will be required to arbitrate any and all employment-related claims I may have against Circuit City, whether or not I become employed by Circuit City.” Id. at 374. Of course, just because the agreement in this case could have been drafted more clearly does not necessarily mean that it is ambiguous as to the obligation to arbitrate in the circumstances of this case. However, the agreement in Johnson offers a useful touchstone for clarity, reinforcing our conclusion that CSD’s provision is ambiguous.
Given this ambiguity, we are bound by Maine law’s “bedrock rule of contract interpretation ... that ambiguities in a document are construed against its drafter.” Barrett, 870 A.2d at 150. In Barrett, the Law Court considered an arbitration agreement entered into by retirees and their investment advisor. A dispute arose as to whether the agreement’s scope included tort claims that had no nexus with the advisor’s administration of the retirees’ investment account, and the court found the agreement to be ambiguous. Not only did the court construe the ambiguity against the advisor, who had drafted the agreement, but it noted that the rationale for doing so was “particularly compelling” given the unequal bargaining positions of the parties and the fact that the contract was offered to the retirees on a “take it or leave it” basis. Id. at 150-51. This case is similar. Not only was Gove in no position to bargain over the terms of the employment application, but she was also required to accept the arbitration clause as part of an online job application with no meaningful opportunity to inquire as to its meaning.[4]
To be sure, the Law Court also acknowledged in Barrett that Maine has “a broad presumption favoring arbitration.” Id. at 149; see also Anderson v. Banks, 37 A.3d 915, 921 (Me.2012) (recognizing same). The court noted that this presumption was at odds with the principle of construing ambiguities against the drafter of a contract. However, it resolved this conflict in favor of the latter principle, explaining that “[i]n this context, where an individual with little leverage' is entering into an agreement with a larger entity that offers its services on a ‘take it or leave it’ basis, *8 we conclude that the balance tips in favor of applying the equitable rule favoring the construction of the contract against the drafter.” 870 A.2d at 151; cf. Anderson, 37 A.3d at 921 n. 9 (noting that, where parties are in approximately equal bargaining positions, the equitable principle of construing a contract against the drafter is less compelling).
Applying Maine contract law, we must follow the Law Court’s lead. Because of the obligation under Maine law to construe ambiguities against the drafter of a contract, we conclude that Gove is not required to arbitrate her claims. Therefore, the judgment of the district court is affirmed and the case is remanded for further proceedings consistent with this opinion.

So ordered.

. Typically, interlocutory orders are not immediately appealable. See 28 U.S.C. § 1291; *4 see also Campbell v. Gen. Dynamics Gov’t Sys. Corp., 407 F.3d 546, 550 (1st Cir.2005) (stating same). However, the Federal Arbitration Act creates an exception for orders denying petitions to compel arbitration. 9 U.S.C. § 16(a)(1)(B); see also Campbell, 407 F.3d at 550.

. We have often observed that in evaluating an arbitration clause, courts must give due regard to the federal policy favoring arbitration. See Dialysis Access Ctr., 638 F.3d at 376. Pursuant to this policy, "ambiguities as to the scope of the arbitration clause itself [must be] resolved in favor of arbitration.” Id. However, this presumption of arbitrability applies only to the scope of an arbitration agreement, not its validity, and thus it is utilized only where an arbitration agreement is "validly formed and enforceable” under state law, but "ambiguous about whether it covers the dispute at hand.” Id. (quoting Granite Rock Co. v. Int’l Bhd. of Teamsters, -U.S. -, 130 S.Ct. 2847, 2858, 177 L.Ed.2d 567 (2010)). Maine courts have recognized a similar Maine policy favoring arbitration, but, like federal courts, they apply it only if "the parties have generally agreed to arbitrate disputes.” V.I.P., 770 A.2d at 96.

. We do not dispute the dissent’s reading of our precedents concerning the federal policy favoring arbitration. But the dissent attempts to bring these precedents to bear in support of an argument that appellant does not make. To the extent that the dissent suggests that the principle announced in Kristian v. Comcast Corp., 446 F.3d 25 (1st Cir.2006), is unwaivable by a failure to argue it, we disagree. The dissent cites no authority for this proposition and we are not aware of any. Additionally, it is important to understand the interest in fairness underlying our waiver doctrine. Because CSD never developed an argument concerning the federal policy favoring arbitration, Gove, understandably, did not consider the issue to be part of this appeal. Following CSD’s lead, Gove’s responsive brief argues the case exclusively on grounds of Maine law. Accepting the dissent's invitation to decide the case on grounds not introduced by CSD would be unfair to Gove, who was entitled to rely on CSD's identification of the issues raised in its opening brief.

. The clause does state, "If you have any questions regarding this statement and the Arbitration Agreement, please ask a CSD representative before acknowledging.” However, no contact information is provided and, because the application is to be completed online, an applicant may be required to agree to arbitrate before having any contact with a CSD representative.