PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

SAMUEL D. MURIITHI,

    *Plaintiff-Appellee,*

and

KEVIN A. GADSON; OKIERIETA O. ENAJEKPO,

    *Plaintiffs,*

v.

SHUTTLE EXPRESS, INC.,

    *Defendant-Appellant,*

and

SUPERSHUTTLE INTERNATIONAL, INC.; SHUTTLE EXPRESS CORPORATION; VEOLIA TRANSPORTATION, INCORPORATED; VEOLIA ENVIRONMENT SA,

    *Defendants.*

No. 11-1445

Appeal from the United States District Court
for the District of Maryland, at Greenbelt.
Alexander Williams, Jr., District Judge.
(8:10-cv-01057-AW)

Argued: January 29, 2013

Decided: April 1, 2013

Before DAVIS and KEENAN, Circuit Judges, and
John A. GIBNEY, Jr., United States District Judge for the
Eastern District of Virginia, sitting by designation.

Vacated and remanded by published opinion. Judge Keenan wrote the opinion, in which Judge Davis and Judge Gibney joined.

---

**COUNSEL**

**ARGUED:** Christopher A. Parlo, MORGAN LEWIS & BOCKIUS, LLP, New York, New York, for Appellant. John Michael Singleton, Sr., Lutherville, Maryland, for Appellee. **ON BRIEF:** Russell R. Bruch, MORGAN LEWIS & BOCKIUS, LLP, Washington, D.C.; Melissa C. Rodriguez, MORGAN LEWIS & BOCKIUS, LLP, New York, New York, for Appellant.

---

**OPINION**

BARBARA MILANO KEENAN, Circuit Judge:

In this appeal, we consider the enforceability of an arbitration clause included in a franchise agreement between the plaintiff, Samuel Muriithi, and the defendant, Shuttle Express, Inc. The district court refused to compel arbitration based on three provisions in the franchise agreement that the court found were unconscionable: (1) a class action waiver; (2) a requirement that the parties "split" arbitration fees; and (3) a one-year limitations period for asserting claims arising under the franchise agreement. Upon our review, we conclude that the Supreme Court's recent decision in *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740 (2011), requires reversal of the district court's holding that the class action waiver was an unconscionable contract provision. We further conclude that the district court erred in holding that the other two challenged provisions also rendered the arbitration clause unconscionable. Accordingly, we vacate the district court's

judgment and remand the case for entry of an order compelling arbitration of Muriithi's claims.

I.

Samuel Muriithi was a driver for Shuttle Express, a passenger shuttle service, who provided transportation for passengers to and from the Baltimore–Washington International Thurgood Marshall Airport. Muriithi alleges that Shuttle Express misled him concerning the compensation he would receive, inducing him to sign a Unit Franchise Agreement with Shuttle Express in April 2007 (the Franchise Agreement). Muriithi also alleges that Shuttle Express improperly classified him in the Franchise Agreement as an "independent contractor" or "franchisee," rather than as an "employee," and that, as a result, he is entitled to overtime pay and to compensation of at least the prevailing minimum wage required under federal law.

Asserting these grounds for relief, Muriithi initiated a collective action against Shuttle Express under the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201 through 219.[1] In his complaint, Muriithi also raised various Maryland state law claims on behalf of all members of a purported class. Shuttle Express moved to dismiss the complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure, or to compel arbitration under the Federal Arbitration Act (FAA), 9 U.S.C. § 4.

The Franchise Agreement contains an arbitration clause, which states in material part:

---

[1]Initially, Muriithi's complaint included two other named plaintiffs, who later withdrew from the case. Muriithi named several other corporate entities as defendants, which were dismissed in a ruling not challenged on appeal. Thus, the only remaining parties in the case are Muriithi and Shuttle Express.

*ARBITRATION; ATTORNEY'S FEES*

Except as provided below, any controversy arising out of this Agreement shall be submitted to the American Arbitration Association at its offices in or nearest to Baltimore, Maryland, for final and binding arbitration in accordance with its commercial rules and procedures which are in effect at the time the arbitration is filed. The parties shall bear their own costs including without limitation attorney's fees, and shall each bear one-half (1/2) of the fees and costs of the arbitrator.

. . .

The parties acknowledge that their relationship is unique and that there are and will be differences from the relationships [Shuttle Express] may have with other franchisees or licensees. Therefore, any arbitration, suit, action or other legal proceeding shall be conducted and resolved on an individual basis only and not on a class-wide, multiple plaintiff, consolidated or similar basis.

(individually, the fee-splitting clause and the class action waiver; in its entirety, the Arbitration Clause).

Also relevant to this appeal is the one-year limitations provision included in the Franchise Agreement, which states as follows:

*STATUTE OF LIMITATIONS*

The parties hereby acknowledge and agree that any arbitration, suit, action or other proceeding relating to this Agreement must be brought within one (1) year after the occurrence of the act or omission that

is the subject of the arbitration, suit, action or other legal proceeding.

(the one-year limitations provision).[2]

In considering Shuttle Express' motion to compel arbitration, the district court first addressed the issue whether Muriithi's claims fall within the scope of the Arbitration Clause. The court held that Muriithi's FLSA and Maryland law claims "arise out of" the Franchise Agreement and, thus, fall within the scope of disputes covered by the parties' agreement to arbitrate. The court further concluded, however, that the Arbitration Clause is unenforceable based on three provisions in the Franchise Agreement that the court found were unconscionable.

First, under the fee-splitting provision, the district court found that the costs of arbitration would be "so prohibitively expensive as to deter arbitration" at Muriithi's request. Second, the district court held that the class action waiver and the fee-splitting provision operate together to "prevent [Muriithi] from fully vindicating [his] statutory rights." The court also found that if "class actions are prohibited by the [Franchise Agreement], the realistic alternative would be that no individual suits are brought given that the costs of each individual arbitration has the potential to exceed any recovery."

Third, the district court concluded that the one-year limitations provision governing all claims arising out of the Franchise Agreement also "operates to prevent [Muriithi] from vindicating [his] statutory rights," because the FLSA affords him at least a two-year period in which to assert his claims. 29 U.S.C. § 255(a). The district court thus determined that

---

[2]Pursuant to a choice of law clause, the parties agreed that Delaware law governs all matters relating to the Agreement. There do not appear to be any contested issues of state law in this appeal. Moreover, our analysis in this case is based on controlling principles of federal law.

because the Arbitration Clause was "so permeated by substantively unconscionable provisions," it could not be remedied by severing the unconscionable parts. Accordingly, the court denied Shuttle Express' motion to compel arbitration.[3] Shuttle Express timely filed a notice of appeal.

## II.

We have jurisdiction over this appeal pursuant to 9 U.S.C. § 16(a)(1)(B), which authorizes an appeal from a district court's denial of a petition to compel arbitration brought under Section 4 of the FAA. Shuttle Express challenges the district court's order refusing to compel arbitration, contending that: (1) under the Supreme Court's holding in *AT&T Mobility LLC v. Concepcion*, the class action waiver is not unconscionable; (2) Muriithi failed to establish that he will incur "prohibitive" arbitration costs under the fee-splitting provision; and (3) the district court erred in holding as part of the motion to compel arbitration that the one-year limitations provision is unconscionable.[4]

## A.

Upon petition of a party to an arbitration agreement, a district court may compel arbitration to enforce the parties' agreement to arbitrate their disputes. 9 U.S.C. § 4; *Rota-McLarty v. Santander Consumer USA, Inc.*, 700 F.3d 690, 696 n.5 (4th Cir. 2012). We review de novo a district court's denial of a motion to compel arbitration. *Sydnor v. Conesco Fin. Servicing Corp.*, 252 F.3d 302, 304-05 (4th Cir. 2001). We also review de novo questions of state contract law concerning the validity of the parties' arbitration agreement. *Rota-McLarty*, 700 F.3d at 699.

---

[3]The district court made several other rulings regarding Shuttle Express' Rule 12(b)(6) motion that are not relevant to this appeal.

[4]We note that the district court resolved the question regarding the enforceability of the class action waiver without the benefit of *Concepcion*, which was issued after the district court entered its order.

Section 2 of the FAA provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."[5] 9 U.S.C. § 2. We apply ordinary state law principles governing the formation of contracts, including principles concerning the "validity, revocability, or enforceability of contracts generally." *Hill v. Peoplesoft USA, Inc.*, 412 F.3d 540, 543 (4th Cir. 2005) (quoting *Perry v. Thomas*, 482 U.S. 483, 493 n.9 (1987)). We also apply the federal substantive law of arbitrability, which governs all arbitration agreements encompassed by the FAA. *Id.* (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)).

B.

A court may compel arbitration of a particular dispute only when the parties have agreed to arbitrate their disputes and the scope of the parties' agreement permits resolution of the dispute at issue. *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960); *see also UBS Fin. Servs., Inc. v. Carilion Clinic*, 706 F.3d 319, 324 n.2 (4th Cir. 2013). The issue whether a dispute is arbitrable presents primarily a question of contract interpretation, requiring that we give effect to the parties' intentions as expressed in their agreement. *Wachovia Bank, N.A. v. Schmidt*, 445 F.3d 762, 767 (4th Cir. 2006). Any uncertainty regarding the scope of arbitrable issues agreed to by the parties must be resolved in

---

[5]Congress enacted the FAA to "reverse the longstanding judicial hostility to arbitration agreements." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991); *see also Am. Gen. Life & Acc. Ins. Co. v. Wood*, 429 F.3d 83, 87 (4th Cir. 2005) (the FAA was "a response to hostility of American courts to the enforcement of arbitration agreements") (citation omitted). To effectuate that legislative purpose, Section 2 is the "primary substantive provision" of the FAA, *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983), and "Section 2 embodies the national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts," *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006).

favor of arbitration. *Moses H. Cone*, 460 U.S. at 24-25; *see also Hill*, 412 F.3d at 543.

In the Franchise Agreement, the parties agreed that "any controversy arising out of this [a]greement shall be submitted to" arbitration. Muriithi's claims under the FLSA and the Maryland Wage and Hour Law, Md. Lab. & Empl. Code §§ 3-401 to 3-431, are based on his allegation that he improperly was classified as an "independent contractor" or "franchisee," rather than as an "employee." This dispute regarding his classification derives from the language of the Franchise Agreement, which in its section defining the "Relationship of Parties" identifies Muriithi as "independent contractor," "franchisee," and "independent owner of [his] business." Additionally, in his claim under the Maryland Franchise Registration and Disclosure Law, Md. Code Bus. Reg. §§ 14-201 to 14-233, Muriithi alleges that Shuttle Express failed to inform him about the numerous costs and fees, which were set forth in the Franchise Agreement. Therefore, although Muriithi's claims are asserted under various provisions of federal and state law, the claims plainly arise out of the Franchise Agreement and fall within the scope of the Arbitration Clause.[6]

## C.

We turn to address the enforceability of the class action waiver. In its decision denying Shuttle Express' motion to compel arbitration, the district court identified the class action waiver as one factor preventing Muriithi from fully vindicating his statutory rights. In the district court's view, upon a

---

[6]The fact that Muriithi's claims allege violations of federal and state statutes, rather than breach of contract, does not affect the arbitrability of those claims. *See Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 89 (2000) (stating that "we have recognized that federal statutory claims can be appropriately resolved through arbitration, and we have enforced agreements to arbitrate that involve such claims"); *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 506 (4th Cir. 2002) (FLSA claims "may properly be resolved in mandatory arbitration proceedings").

prohibition of class actions, the only "realistic alternative would be that no individual suits are brought given that the costs of each arbitration has [sic] the potential to exceed any recovery."

Shuttle Express contends, among other things, that the district court's refusal to enforce the class action waiver is "directly at odds" with the Supreme Court's recent decision in *Concepcion*, which held that "[r]equiring the availability of classwide arbitration interferes with the fundamental attributes of arbitration and thus creates a scheme inconsistent with the FAA." 131 S. Ct. at 1748. Thus, Shuttle Express argues that the district court erred in holding that the class action waiver rendered the Arbitration Clause unconscionable.

In response, Muriithi argues that the holding in *Concepcion* is inapposite because the law at issue in that case was based on California state law, articulated in *Discover Bank v. Superior Court*, 113 P.3d 1100 (Cal. 2005), which held that class action waivers in arbitration agreements are unconscionable. Muriithi therefore contends that the decision in *Concepcion* is limited in scope to the FAA's preemption of state law on this issue. We disagree with Muriithi's arguments.

The Supreme Court's holding in *Concepcion* sweeps more broadly than Muriithi suggests. In *Concepcion*, the Supreme Court cautioned that the generally applicable contract defense of unconscionability may not be applied in a manner that targets the existence of an agreement to arbitrate as the basis for invalidating that agreement. 131 S. Ct. at 1746-47. Applying that principle to the *Discover Bank* "rule" at issue, the Court explained that state law cannot "stand as an obstacle to the accomplishment of the FAA's objectives," by interfering with "the fundamental attributes of arbitration." 131 S. Ct. at 1748.

We recently discussed the holding in *Concepcion* in our decision in *Noohi v. Toll Bros., Inc.*, ___ F.3d ___, 2013 WL

680690, at *6 (4th Cir. Feb. 26, 2013).[7] We explained that the holding "prohibited courts from altering otherwise valid arbitration agreements by applying the doctrine of unconscionability to eliminate a term barring classwide procedures." *Id.* (citing *Concepcion*, 131 S. Ct. at 1750-53). Thus, contrary to Muriithi's contention, the Supreme Court's holding was not merely an assertion of federal preemption, but also plainly prohibited application of the general contract defense of unconscionability to invalidate an otherwise valid arbitration agreement under these circumstances. The district court in the present case, deciding the same issue of unconscionability prior to *Concepcion*, reached the opposite conclusion.[8] Accordingly, we conclude that the district court erred in holding that the class action waiver was unconscionable.

[7]In *Noohi*, we addressed the issue whether a Maryland rule, requiring that an arbitration agreement be supported by mutual consideration irrespective whether the underlying contract was supported by mutual consideration, was preempted by the FAA. 2013 WL 680690, at *9, 11-12 (citing *Cheek v. United Healthcare of Mid-Atl., Inc.*, 835 A.2d 656 (Md. 2003)). We held that the Maryland rule did not increase procedural formality or risks to defendants, which were "primary concerns underlying *Concepcion*," nor did it involve, as in *Concepcion*, a state-law rule requiring class arbitration. *Id.* at *11. We concluded that the Maryland rule was not preempted by the FAA. *Id.* at *12.

[8]In a case decided several years before *Concepcion*, we addressed a related question whether Congress, in enacting the FLSA, provided a right to class action relief that could not be waived. There, in *Adkins v. Labor Ready, Inc.*, 303 F.3d 496 (4th Cir. 2002), a plaintiff tried to avoid arbitration arguing that the arbitration clause, which included a class action waiver, "foreclose[d] redress" of his federal statutory rights under the FLSA. *Id.* at 502. We held that there was no indication "in the text, legislative history, or purpose of the FLSA that Congress intended to confer a nonwaivable right to a class action under that statute." *Id.* at 503. Thus, we concluded that the inability to pursue an FLSA claim as a member of a class proceeding is by itself insufficient to override "the strong congressional preference for an arbitral forum." *Id.*

D.

We next consider the issue whether the district court erred in holding that the fee-splitting provision imposed prohibitive arbitration costs on Muriithi. Shuttle Express argues that Muriithi did not meet his burden of showing prohibitive costs under *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79 (2000), because he did not present sufficient evidence of: (1) the cost of arbitration; (2) his ability to pay; and (3) the difference in cost between arbitration of his dispute and litigation. *See id.* at 90-92.

In response, Muriithi contends that the projected costs of arbitrating his dispute render the Franchise Agreement unenforceable, because "it would always cost more to enforce the agreement than to ignore clear violations" when a party's damages do not substantially exceed the expected cost of the proceedings. We disagree with Muriithi's arguments.

In holding that the costs of arbitration in this case would be prohibitive, the district court noted Muriithi's argument that the fees to the arbitrator, administration fees of the AAA, and "various other fees," could reach a total cost of $5,600. Under the fee-splitting provision, Muriithi would be required to bear one-half of these expenses.

The district court observed that Muriithi "project[s] that the total amount of individual recovery will be far below potential fees incurred in arbitration." Relying on information contained in Muriithi's 2009 federal income tax return, the district court found that Muriithi had established that he was unable to pay even the "conservative cost speculations" he had presented regarding projected arbitration costs. Therefore, the district court held that the fee-splitting provision rendered the Arbitration Clause unconscionable.

A fee-splitting provision can render an arbitration agreement unenforceable if, under the terms of the provision, an

aggrieved party must pay arbitration fees and costs "that are so prohibitive as to effectively deny the employee access to the arbitral forum." *Bradford v. Rockwell Semiconductor Sys., Inc.*, 238 F.3d 549, 554 (4th Cir. 2001) (citing *Green Tree*, 531 U.S. at 90). We analyze issues regarding prohibitive arbitration costs on a case-by-case basis, focusing on a number of factors that include the fees and costs of arbitration, the claimant's ability to pay, the value of the claim, and the difference in cost between arbitration and litigation. *Id.* at 556. However, the party seeking to invalidate an arbitration agreement on this basis bears the "substantial" burden of showing a likelihood of incurring prohibitive arbitration costs. *In re Cotton Yarn Antitrust Litig.*, 505 F.3d 274, 286-87 (4th Cir. 2007) (citing *Green Tree*, 531 U.S. at 92).

Under the holding in *Green Tree*, a party meeting this substantial evidentiary burden has established a basis for invalidation of an arbitration agreement. *See Green Tree*, 531 U.S. at 90-92; *Bradford*, 238 F.3d at 554. Arbitration cannot be compelled when arbitral costs are so high that they effectively preclude a litigant from vindicating his federal statutory rights in an arbitral forum. *See Green Tree*, 531 U.S. at 90 (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 28 (1991)) (claims arising under a federal statute "may be arbitrated because 'so long as the prospective litigant effectively may vindicate [his or her] statutory cause of action in the arbitral forum, the statute serves its functions'"). Under *Green Tree*, a party seeking to invalidate an arbitration agreement on these grounds will not be permitted merely to allege the likelihood of incurring prohibitive arbitration costs, but must establish the likely existence of such costs with firm proof. *In re Cotton Yarn Antitrust Litig.*, 505 F.3d at 286-87; *Adkins*, 303 F.3d at 503; *Bradford*, 238 F.3d at 556.

The Supreme Court's decision in *Concepcion* does not alter this longstanding principle. The Court's holding there did not mention, much less directly overrule, its prior opinion in *Green Tree*. Moreover, the Court in *Concepcion* was not

required to address directly the issue of prohibitive arbitration costs, because the arbitration agreement at issue contained certain financial concessions on the part of AT&T, essentially guaranteeing that aggrieved customers would be "made whole." 131 S. Ct. at 1753.

We will not readily infer that the Supreme Court impliedly has overruled its own precedent. *See Agostini v. Felton*, 521 U.S. 203, 237 (1997) (when Supreme Court precedent has "direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, [courts] should follow the case which directly controls, leaving to [the Supreme] Court the prerogative of overturning its own decisions" (citation omitted)). Thus, we apply the principles from *Green Tree* to the evidence before us.

We conclude that Muriithi has not met his substantial burden under *Green Tree* of showing prohibitive arbitration costs. Significantly, Muriithi has not established even "the most basic element of this challenge," namely, the costs of arbitration. *Adkins*, 303 F.3d at 503. Muriithi posited to the district court that AAA arbitrator fees could range between $800 and $2,200 per day. However, that estimate bears no relation to the facts of the present case, because Muriithi's proffer regarding those fees apparently was based on rates charged by three arbitrators who had provided fee estimates in a wrongful discharge suit in the Virgin Islands. *See Alexander v. Anthony Int'l, L.P.*, 341 F.3d 256, 261-62 (3d Cir. 2003).

Muriithi cannot meet his burden of showing that he likely will incur prohibitive arbitrator fees simply by showing the fees that some arbitrators are charging somewhere. *See Green Tree*, 531 U.S. at 90 n.6 (list of arbitrators' fees "as reflected in the opinions" of other courts provided an insufficient "basis for concluding that [a claimant] would in fact have incurred substantial costs in the event her claim went to arbitration"). Muriithi plainly did not offer evidence regarding the arbitra-

tor's fees likely to be incurred in the resolution of the present dispute, even though "[i]t was within his power to obtain this information by simply investigating the option of arbitration in the first place." *Adkins*, 303 F.3d at 503.

Muriithi also has not provided evidence or argument about the value of his claim, which is a critical factor in a "prohibitive costs" analysis. *Id.* (rejecting "prohibitive costs" challenge in part because the plaintiff failed to provide a basis permitting "a serious estimation of how much money is at stake for each individual plaintiff"). Evidence regarding the value of Muriithi's claim is necessary to determine the administrative fees of the AAA under the AAA's rules. Therefore, we conclude that Muriithi has not carried his burden of showing that he likely would incur prohibitive costs by participating in bilateral arbitration with Shuttle Express.[9] *See Green Tree*, 531 U.S. at 92. Although we would have reached this conclusion under the guidance of *Green Tree* solely on the basis of the lack of evidence before us, our conclusion further is supported by Shuttle Express' agreement, at oral argument before this Court, to pay all arbitration costs if this case is referred to arbitration.[10]

---

[9]Thus, we do not face the situation in which it has been shown that enforcing a class action waiver effectively prevents a plaintiff from vindicating his statutory rights. *Contrast In re Am. Express Merchants' Litig.*, 667 F.3d 204, 218 (2d Cir.), *cert. granted*, 133 S. Ct. 594 (2012).

[10]Shuttle Express' "eleventh hour" agreement to pay all arbitration costs does not render entirely moot the issue of prohibitive costs. A party's agreement to pay all arbitration costs, when made in a timely manner such as before a district court has ruled on the enforceability of the arbitration clause, "moots" the issue and "foreclos[es] the possibility that [the opposing party] could endure any prohibitive costs in the arbitration process." *Livingston v. Assocs. Fin., Inc.*, 339 F.3d 553, 557 (7th Cir. 2003); *see also Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 300 (5th Cir. 2004); *Large v. Conesco Fin. Servicing Corp.*, 292 F.3d 49, 56-57 (1st Cir. 2002).

Here, however, before oral argument in this Court, Shuttle Express at most held out the possibility that it would be willing to pay all arbitration

### E.

Finally, we address the district court's holding that the one-year limitations provision in the Franchise Agreement also rendered the Arbitration Clause unconscionable. The court concluded that the one-year limitations provision was unconscionable because it unreasonably restricted Muriithi's ability to arbitrate "employment-related statutory claims," including FLSA claims.

Shuttle Express contends that the district court erred in addressing this issue, because the one-year limitations provision is not included in the Arbitration Clause and, thus, any challenge to this limitations provision must wait until the entire contract is considered by the arbitrator. Muriithi does not offer a response to this argument.

We turn to consider the question whether this issue regarding the one-year limitations provision was properly decided by the district court as part of its resolution of the motion to compel. A party challenging the enforceability of an arbitration clause under Section 2 of the FAA must rely on grounds that "relate specifically to the arbitration clause and not just to the contract as a whole." *Snowden v. CheckPoint Check*

---

costs. Under these circumstances, it would be an extreme waste of already-expended judicial and litigation resources to foreclose consideration of the prohibitive costs issue as moot now, simply because Shuttle Express, after suffering an adverse ruling in the district court, made a last-minute concession to bolster its position in this Court. *Cf. Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 191-92 (2000) (cautioning that finding a case moot in later stages of litigation could be "more wasteful than frugal"). While such considerations do not warrant retaining jurisdiction over a case "in which one or both of the parties plainly lack a continuing interest," such is not the case here. *See id.* at 192. Despite Shuttle Express' concession, the merits of the case (whether Muriithi could effectively vindicate his rights under the Arbitration Clause) and the relief sought (whether this case proceeds in arbitration or litigation) are still very much in dispute.

*Cashing*, 290 F.3d 631, 636 (4th Cir. 2002) (citation omitted). Thus, a challenge specific to an arbitration clause is considered by the court in a motion to compel, while a challenge relating to the entire contract is heard only after the merits of a case have been referred to an arbitrator or have been retained for decision by the court. *See Hooters of Am., Inc. v. Phillips*, 173 F.3d 933, 938 (4th Cir. 1999) (in ruling on motion to compel, courts consider challenges that "relate specifically to the arbitration clause and not just to the contract as a whole"); *Jeske v. Brooks*, 875 F.2d 71, 75 (4th Cir. 1989) ("Because the alleged defects pertain to the entire contract, rather than specifically to the arbitration clause, they are properly left to the arbitrator for resolution.").

The one-year limitations provision is not referenced in the Arbitration Clause, but is applicable generally to the Franchise Agreement. By its terms, the one-year limitations provision applies to "any arbitration, suit, action or other proceeding relating to this Agreement. . . ." Moreover, the language of this provision does not overlap in any substantive manner with the language of the Arbitration Clause, such as by directing the parties to a different forum depending on when their claim was raised. Thus, the one-year limitations provision discretely answers the question *when* any claim under the Franchise Agreement must be brought, whereas the Arbitration Clause is silent on that issue and instead addresses the proper forum *where* such claims under the Franchise Agreement must be brought.

In view of its gatekeeping function, the scope of a motion to compel arbitration is restricted to consideration of challenges specific to the arbitration clause. *See Adkins*, 303 F.3d at 502; *Jeske*, 875 F.2d at 75. Thus, absent a contrary agreement by the parties, general contract defenses that are applicable to the entire contract, such as the present one-year limitations provision, are reserved for the forum in which the dispute ultimately will be resolved. *See Adkins*, 303 F.3d at 502; *Jeske*, 875 F.2d at 75; *see also Kristian v. Comcast*

*Corp.*, 446 F.3d 25, 44 (1st Cir. 2006) (a "statute of limitations defense is an affirmative defense" that lies "squarely in the purview of the arbitrator"). Accordingly, we hold that because Muriithi's challenge to the one-year limitations provision does not rely on any aspect of the Arbitration Clause, but relates only to the general contract defense itself, the district court erred in holding the one-year limitations period unconscionable as part of the court's resolution of the motion to compel.

### III.

In sum, we hold that the district court erred in concluding that the class action waiver was unconscionable and rendered the Arbitration Clause unenforceable on that ground. We further hold that the district court erred in holding that the fee-splitting provision was unconscionable on the ground that its application in Muriithi's case will cause him to incur prohibitive arbitration costs. Finally, we hold that the district court erred in ruling on the enforceability of the one-year limitations provision, because that issue is a question to be decided by the arbitrator as part of the resolution of Muriithi's claim.

For these reasons, we vacate the district court's judgment, and remand the case with instructions that the district court enter an order compelling arbitration of Muriithi's claims with full costs of those arbitration proceedings to be paid by Shuttle Express pursuant to Shuttle Express' agreement, in open court, to pay such costs.

*VACATED AND REMANDED*