PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

KARREN Y. HILL,
                    *Plaintiff-Appellee,*

v.                                                      No. 04-2187

PEOPLESOFT USA, INCORPORATED,
                    *Defendant-Appellant.*

Appeal from the United States District Court
for the District of Maryland, at Greenbelt.
Roger W. Titus, District Judge.
(CA-04-237-RWT)

Argued: May 25, 2005

Decided: June 22, 2005

Before MOTZ and GREGORY, Circuit Judges, and
HAMILTON, Senior Circuit Judge.

---

Vacated and remanded with instructions by published opinion. Senior
Judge Hamilton wrote the opinion, in which Judge Motz and Judge
Gregory joined.

---

## COUNSEL

**ARGUED:** Fred Saul Sommer, SHULMAN, ROGERS, GANDAL,
PORDY & ECKER, P.A., Rockville, Maryland, for Appellant. Pat-
rick Joseph Massari, Washington, D.C., for Appellee. **ON BRIEF:**
Daniel H. Handman, SHULMAN, ROGERS, GANDAL, PORDY &
ECKER, P.A., Rockville, Maryland, for Appellant.

**OPINION**

HAMILTON, Senior Circuit Judge:

The issue in this case is whether the district court erred when it refused to compel Karren Hill (Hill) to arbitrate the discrimination claims she brought against PeopleSoft USA, Incorporated (People-Soft). The district court refused to compel arbitration, holding that the arbitration agreement signed by the parties was not supported by consideration. PeopleSoft appeals, and, for the reasons stated below, we vacate the district court's judgment and remand the case to the district court with instructions to grant the motion to compel arbitration.

I

In August 2001, by way of an offer letter (the Offer Letter), PeopleSoft offered Hill the position of customer product consultant. In the Offer Letter, PeopleSoft indicated that, as a condition of her employment, Hill would have to sign a separate arbitration agreement (the Arbitration Agreement).

The Arbitration Agreement signed by the parties is a comprehensive six-page document which sets forth both Hill and PeopleSoft's obligations concerning arbitration. Specifically, in the Arbitration Agreement, the parties agreed to arbitrate "all" claims arising out of Hill's employment relationship with PeopleSoft, except for those claims involving workers compensation, unemployment insurance, or the administrative jurisdiction of a labor commissioner, the National Labor Relations Board, or the Equal Employment Opportunity Commission. Moreover, in the Arbitration Agreement, PeopleSoft retained the right to enforce, in court, any violation of its intellectual property rights.

The Arbitration Agreement also sets forth the process for requesting arbitration, the parties' rights concerning legal representation in the arbitration proceeding, the rules governing the selection of an arbitrator, the arbitrator's authority, the pleadings and extensive discovery allowed in the arbitration proceeding, the hearing procedure, and information regarding fees and costs. Moreover, in the Arbitra-

tion Agreement, neither party reserved the right to modify the agreement's terms.

In the Offer Letter, PeopleSoft also indicated that Hill, by accepting PeopleSoft's offer of employment, was agreeing to be bound by the company's "Internal Dispute Solution" program (the IDS Program). Unlike the Arbitration Agreement, the IDS Program is not a document signed by the parties. Rather, the IDS Program is a company policy generally applicable to all employees. It involves a three-stage process for resolving all "legal employment claim(s) or dispute(s)." Step one, the open-door policy, allows an employee to raise any issue with her manager. Step two, the employee relations step, involves action by the company's human resources department and may involve internal or external mediation of a claim or dispute. If the first two steps are unsuccessful at resolving the claim or dispute, the parties must proceed to the third step—binding arbitration. Unlike the separate Arbitration Agreement, in the IDS Program PeopleSoft reserved the right to "change" the program "without notice."

On January 28, 2004, Hill brought this action against PeopleSoft in the United States District Court for the District of Maryland. According to the complaint, numerous acts of discrimination by Hill's coworkers and superiors in PeopleSoft's Bethesda, Maryland office and elsewhere formed the basis of her claims of sexual harassment, hostile work environment, retaliation, and race discrimination. On February 18, 2004, PeopleSoft filed a motion to compel arbitration. In response, Hill filed an opposition to the motion to compel arbitration and filed her own cross-motion for summary judgment. In her cross-motion for summary judgment, Hill argued that the Arbitration Agreement was both procedurally and substantively unconscionable and that PeopleSoft waived its right to proceed to arbitration. On August 31, 2004, the district court denied PeopleSoft's motion to compel arbitration, and PeopleSoft noted a timely appeal.

II

Under the Federal Arbitration Act (the FAA), a court must stay "any suit or proceeding" pending arbitration of "any issue referable to arbitration under an agreement in writing for such arbitration." 9 U.S.C. § 3. Because ascertaining the scope of an arbitration agree-

ment is a task of contract interpretation, we review *de novo* a district court's determination of the arbitrability of a dispute. *United States v. Bankers Ins. Co.*, 245 F.3d 315, 319 (4th Cir. 2001). At the same time, we give due regard to the federal policy favoring arbitration and resolve "any doubts concerning the scope of arbitrable issues . . . in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

The Supreme Court has directed that we "apply ordinary state-law principles that govern the formation of contracts," *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995), and the "federal substantive law of arbitrability." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24. Thus, state law determines questions "concerning the validity, revocability, or enforceability of contracts generally," *Perry v. Thomas*, 482 U.S. 483, 493 n.9 (1987), but the FAA creates "a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24. The FAA constitutes "a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." *Id.*

Because this case involves the question of whether the Arbitration Agreement was a valid contract, we turn to Maryland law, which the parties agree applies in this case. Under Maryland law, to be binding and enforceable, an arbitration agreement must be a valid contract. *Cheek v. United Healthcare of Mid-Atlantic, Inc.*, 835 A.2d 656, 661 (Md. 2003). In examining whether an arbitration agreement is a valid contract, we examine only the language of the arbitration agreement itself. *Id.* at 664-65. Moreover, to be binding and enforceable, a contract must be supported by consideration. *Id.* at 661. A "promise becomes consideration for another promise only when it constitutes a binding obligation." *Id.* Unlike a binding obligation, an "'illusory promise' appears to be a promise, but it does not actually bind or obligate the promisor to anything." *Id.* at 662. Because an illusory promise is not binding on the promisor, an illusory promise cannot constitute consideration. *Id.*

In this case, the district court determined that the Arbitration Agreement was not supported by consideration because, under the

IDS Program, PeopleSoft reserved the right to change the IDS Program "without notice." According to the court, PeopleSoft's retention in the IDS Program of the right to change the IDS Program without notice rendered PeopleSoft's promise to arbitrate in the Arbitration Agreement illusory because PeopleSoft, in effect, could eliminate arbitration altogether.

In our view, the district court's reasoning is flawed. Put simply, the court below, per *Cheek*, was not allowed to look beyond the separate Arbitration Agreement, signed by the parties, to determine whether the agreement was supported by consideration. Had the court confined its analysis to the Arbitration Agreement, most assuredly, the court would have concluded that the Arbitration Agreement was supported by consideration.

To be sure, the Arbitration Agreement is a specific, comprehensive document, setting forth all of the parties' rights and obligations concerning arbitration. The Arbitration Agreement unambiguously binds both Hill and PeopleSoft to arbitrate "all" claims, save a few, specifically enumerated exceptions that are not relevant here. The Arbitration Agreement sets forth the entire arbitration process, beginning with the scope of arbitration and ending with the rules governing fees and costs. Under the Arbitration Agreement, neither party has the right to alter or amend the scope of arbitration or the arbitration procedures. Because the Arbitration Agreement, on its face, unambiguously requires both parties to arbitrate, the district court erred when it concluded that the Arbitration Agreement was not supported by consideration.

Like the district court below, Hill relies on *Cheek*. In *Cheek*, the plaintiff agreed to abide by the terms of an arbitration policy contained in an employee handbook. The policy required the parties to arbitrate all employment related disputes, but importantly in the policy the employer, United Healthcare, expressly reserved the right to alter, amend, modify, or revoke the policy at its sole discretion at any time. *Id.* at 658. Because the policy in *Cheek* gave United Healthcare the right to alter, amend, modify, or revoke the policy, the court concluded that United Healthcare's promise to arbitrate all employment related disputes was illusory. *Id.* at 662.

Hill takes the position, as did the district court, that PeopleSoft's retention in the IDS Program of the right to change the IDS Program "without notice" is analogous to United Healthcare's retention of the right to alter, amend, modify, or revoke its arbitration policy. The critical distinction between this case and *Cheek* is obvious. Unlike this case, the reservation of rights in *Cheek* was *contained* in the arbitration policy. Looking at the *four corners* of the arbitration policy in *Cheek*, the court understandably concluded that the policy contained an illusory promise. In the instant case, by contrast, looking at the four corners of the separate Arbitration Agreement, the agreement contains no such illusory promise. To be sure, it is only when we are asked to look beyond the four corners of the Arbitration Agreement and examine the IDS Program—something *Cheek* tells us we are not allowed to do—that Hill's argument finds its support.

In sum, the district court simply was not at liberty to go beyond the language of the Arbitration Agreement in determining whether the agreement contained an illusory promise. *Id.* at 664-65. When one examines the language of the Arbitration Agreement itself, only one conclusion is tenable—the agreement is binding and enforceable.*

### III

For the reasons stated herein, the judgment of the district court is vacated and the case is remanded with instructions to grant People-Soft's motion to compel arbitration.

*VACATED AND REMANDED WITH INSTRUCTIONS*

---

*In the district court, Hill presented numerous arguments concerning the Arbitration Agreement's alleged procedural and substantive unconscionability, as well as an argument that PeopleSoft waived its right to proceed to arbitration. Although the district court did not address these arguments, a remand to address these arguments is unnecessary because the arguments raise purely legal questions based on facts not in dispute. *Cf. Perry v. Bartlett*, 231 F.3d 155, 160 (4th Cir. 2000) (holding that, although the district court erred in ruling that a statute was moot, appellate court could reach the question of the statute's constitutionality where the question raised was a purely legal one). After a careful and thorough review of Hill's unconscionability and waiver arguments, we conclude that the arguments have no merit.