# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-3957

_____

| | | |
|---|---|---|
| Liberty Mutual Insurance Company, | * | |
| | * | |
| Plaintiff - Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of North Dakota. |
| Mandaree Public School District #36, | * | |
| | * | |
| Defendant - Appellant. | * | |

_____

Submitted: June 13, 2007
Filed: October 10, 2007

_____

Before LOKEN, Chief Judge, ARNOLD and COLLOTON, Circuit Judges.

_____

LOKEN, Chief Judge.

Mandaree Public School District and Tooz Construction, Inc., entered into a contract to remodel and expand a public school. The standard AIA contract provided that disputes between Mandaree as owner and Tooz as contractor would be resolved by arbitration in accordance with the Rules of the American Arbitration Association (AAA). Liberty Mutual Insurance Company issued a performance bond to secure Tooz's performance. The bond incorporated the construction contract by reference and provided that "[a]ny proceeding, legal or equitable, under this Bond may be instituted in any court of competent jurisdiction [where] the work is located . . .within two years after the Surety . . . fails to perform its obligations under this Bond."

When a dispute arose between Tooz and Mandaree, Tooz initiated arbitration. Mandaree counterclaimed and then attempted to assert a claim against Liberty Mutual under the bond. Liberty Mutual refused to join the arbitration, and the arbitrator denied Mandaree's request to amend. Liberty Mutual later advised the AAA it would consent "to becoming part of the arbitration," but further actions by Mandaree prompted Liberty Mutual to send the AAA a letter withdrawing its consent. That same day, Liberty Mutual filed this lawsuit seeking a declaratory judgment that Mandaree's unilateral actions discharged Liberty Mutual's obligations under the bond. An AAA Claims Manager advised, "we are not adding [Liberty Mutual] as a party" because it withdrew its consent to participate. Mandaree moved to stay the lawsuit and to compel Liberty Mutual "to arbitrate all of its claims against Mandaree by joining in the pending arbitration." The district court[1] denied the motion, and Mandaree appeals. The Federal Arbitration Act authorizes appellate review of an interlocutory order refusing to compel arbitration. 9 U.S.C. § 16(a)(1). We affirm.

## I. Did Liberty Mutual Agree To Arbitrate?

The Federal Arbitration Act overruled historic judicial hostility to arbitration and placed agreements to arbitrate "upon the same footing as other contracts." Allied-Bruce Terminix Cos. v. Dobson, 513 U.S. 265, 271 (1995) (quotation omitted). However, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." AT & T Techs., Inc. v. Communications Workers of Am., 475 U.S. 643, 648 (1986) (quotation omitted); see First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 943 (1995). The district court denied Mandaree's motion to compel arbitration on the ground that Liberty Mutual neither agreed nor consented to arbitrate its claims against Mandaree under the bond.

---

[1]The HONORABLE DANIEL L. HOVLAND, Chief Judge of the United States District Court for the District of North Dakota.

## A. Did the Performance Bond Contain an Agreement To Arbitrate?

Mandaree argues that, since the bond incorporated a construction contract that obligated Mandaree and Tooz to arbitrate *their* disputes under the contract, the bond contained an agreement by Liberty Mutual to arbitrate *its* disputes with Mandaree under the bond. "We apply ordinary state law contract principles to decide whether parties have agreed to arbitrate a particular matter, giving healthy regard for the federal policy favoring arbitration." AgGrow Oils, L.L.C. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 242 F.3d 777, 780 (8th Cir. 2001) (quotations omitted). In this regard, it is relevant that the bond contained a provision contemplating that disputes will be resolved in court, and the construction contract expressly provided that it "shall not be construed to create a contractual relationship of any kind . . . between any persons or entities other than [Mandaree and Tooz]."

Applying North Dakota law, we considered this same issue and resolved it contrary to Mandaree's position in AgGrow Oils, 242 F.3d at 780-82, a case involving the same bond language and a construction contract with nearly identical arbitration provisions. We held that the incorporation provision did *not* reflect "a mutual intent to compel arbitration of all disputes between the surety and the obligee under the bond." 242 F.3d. at 782. Though it was the surety attempting to compel arbitration in AgGrow, we noted that a contrary rule would also permit a bond obligee to compel an unwilling surety to arbitrate defenses unique to the bond, "such as whether the obligee had impaired the surety's position or released the principal obligor." Id. That is precisely what Mandaree seeks to compel in this case. Concluding that AgGrow Oils is controlling, the district court held "that the incorporation clause in the performance bond at issue in this dispute does not mandate the surety to arbitrate." We agree. Mandaree's attempt on appeal to distinguish AgGrow Oils is unpersuasive, and its frontal attack on the merits of that decision must be addressed to the court en banc.

**B. Did Liberty Mutual Otherwise Agree To Arbitrate This Dispute?**

In the alternative, Mandaree argues that Liberty Mutual agreed to arbitrate an existing controversy when it advised the AAA that it consented "to becoming part of the arbitration" between Tooz and Mandaree. Acknowledging that the Federal Arbitration Act applies to "an agreement in writing to submit to arbitration an existing controversy," 9 U.S.C. § 2, Liberty Mutual responds that its letter to the AAA consenting to join the arbitration was not an offer to Mandaree, and that Liberty Mutual withdrew or revoked its consent before it was accepted by the AAA. In its reply brief, Mandaree argues that its initial offer to arbitrate remained open after Liberty Mutual responded that it would not join the arbitration "at this time and under these circumstances," and therefore Liberty Mutual's subsequent letter to the AAA consenting to join the arbitration was an acceptance that formed an agreement to arbitrate that was, under the Federal Arbitration Act, "irrevocable, and enforceable." 9 U.S.C. § 2. For two distinct reasons, we reject the contention that Liberty Mutual entered into a separate agreement to arbitrate "all of its claims against Mandaree."

First, the argument when fully developed in Mandaree's reply brief assumes that its initial communication to Liberty Mutual was an offer to arbitrate all disputes under the bond. In fact, it was something quite different. When Tooz initiated the arbitration in November 2005, Mandaree filed an answer and counterclaim the following month. On May 17, 2006, Mandaree's attorney submitted a letter request to the AAA Case Manager "to amend its counterclaim and/or to join Liberty Mutual as a party to this arbitration" so as to "assert all of its claims presently made against Tooz . . . against Liberty Mutual." Mandaree requested a "status conference" with the arbitrator to discuss "amending [the] counterclaim" and other pre-hearing issues. Then, on May 19, Mandaree's attorney sent the so-called offer letter to Liberty Mutual. After declaring Tooz in default under the construction contract and demanding that Liberty Mutual meet its obligations under the bond, this letter stated:

-4-

An arbitration hearing is presently scheduled for June 12-14 . . . . Mandaree is in the process of amending its claims in the arbitration to assert claims against Liberty Mutual, as surety for Tooz. The AAA Case Manager for this matter is J.D. Allen and we request that Liberty Mutual contact Mr. Allen for more information about the arbitration. . . . Please call me to discuss this matter so that we can move forward with the arbitration.

This was not a letter requesting Liberty Mutual's agreement to arbitrate, like the letter at issue in Asia Pac. Indus. Corp. v. Rainforest Café, Inc., 380 F.3d 383, 386 (8th Cir. 2004). Rather, without seeking Liberty Mutual's consent, Mandaree asked the arbitrator to add Liberty Mutual as a party and then "requested" that Liberty Mutual gather "more information about the arbitration . . . so that we can move forward with the arbitration." This was a procedural demand by the adversary in an on-going dispute, not an offer to agree on a forum for dispute resolution.

Four days later, Liberty Mutual responded that it would not agree to join the arbitration. The parties held a telephone conference with the arbitrator the next day. On May 30, the arbitrator issued an order denying Mandaree's request to amend its counterclaim because Liberty Mutual did not consent to becoming an additional party to the on-going arbitration. Thus, Mandaree's arbitration request (which in a judicial forum would be called a motion) that Liberty Mutual be compelled to arbitrate was denied. That quasi-judicial denial left no contractual "offer" to arbitrate pending. Therefore, Liberty Mutual's subsequent notice to the AAA that it consented to join the arbitration was not an acceptance of a Mandaree offer that formed an agreement to arbitrate. Rather, it was a voluntary act in the arbitration proceeding that Liberty Mutual could revoke (at least if the AAA approved) without violating the provision in 9 U.S.C. § 2 that agreements to arbitrate are "irrevocable."

Second, even if Mandaree's May 19 letter is construed as a contractual offer to arbitrate, rather than a litigation notice that Liberty Mutual was being compelled to

join the arbitration, it was not an offer commensurate with the scope of Mandaree's motion to compel here at issue -- that Liberty Mutual agree to arbitrate "all of its claims against Mandaree." Rather, it was a specific offer that Liberty Mutual agree to join an on-going arbitration for the limited purpose of allowing Mandaree to assert against Liberty Mutual all of its pending claims against Tooz. The claims that Liberty Mutual now asserts in this lawsuit are based on its unique defenses under the bond, which did not even exist until many weeks later, when Mandaree unilaterally hired a replacement contractor to finish the project. Even construing Liberty Mutual's letter of June 27 to the AAA Case Manager as an acceptance of Mandaree's unrevoked May 19 offer, Liberty Mutual's consent was not an agreement to arbitrate more than what was proposed in Mandaree's offer -- arbitration of Mandaree's pending claims against Tooz. Therefore, Mandaree's motion to compel arbitration of Liberty Mutual's very different claims in this lawsuit was properly denied.

## II. A Belated Jurisdiction Argument

Mandaree argues for the first time on appeal that the district court lacked jurisdiction to deny the motion to compel arbitration because the alleged agreement to arbitrate left the issue of arbitrability for the arbitrator to decide. See Sadler v. Green Tree Servicing, LLC, 466 F.3d 623 (8th Cir. 2006) (enforcing an express provision that the arbitrator would decide arbitrability). In addition to being untimely,[2] this contention is without merit. "Courts should not assume that the parties had agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so." First Options, 514 U.S. at 944 (quotation omitted). Here, there is

---

[2]We disagree with the suggestion in Sadler that this is a question of the district court's subject matter jurisdiction. 466 F.3d at 625. In our view, the Supreme Court's unanimous opinion in First Options made it clear that a federal court has *jurisdiction* to determine whether a question of arbitrability must be decided by the court or by the arbitrator. Here, for example, Mandaree itself invoked the court's Federal Arbitration Act jurisdiction by filing a motion to compel arbitration.

no such evidence because the offer and acceptance allegedly creating an agreement that Liberty Mutual would join the Tooz/Mandaree arbitration did not address who would determine whether the parties had in fact agreed to arbitration. We reject as inconsistent with AgGrow Oils Mandaree's additional contention that Liberty Mutual's agreement on this issue is irrelevant because Tooz and Mandaree agreed to arbitrate arbitrability in the construction contract.

The judgment of the district court is affirmed.

_____