*Schneider Electric Buildings Critical Systems, Inc. v. Western Surety Company*, No. 96, September Term, 2016, Opinion by Adkins, J.

**CONTRACTS — ARBITRATION CLAUSES — INCORPORATION BY REFERENCE:** A contractual provision stating that a surety company is jointly and severally liable for the performance of a construction subcontract does not bind the surety to the subcontract's mandatory arbitration clause. Additionally, the incorporation of the subcontract by reference into the performance bond does not constitute assent to the arbitration clause when the clause refers specifically to the contractor and subcontractor and the bond expressly provides for court action.

Circuit Court for Harford County
Case No.: 12-C-14-002396
Argued: June 2, 2017

IN THE COURT OF APPEALS

OF MARYLAND

No. 96

September Term, 2016

SCHNEIDER ELECTRIC BUILDINGS
CRITICAL SYSTEMS, INC.

v.

WESTERN SURETY COMPANY

Barbera, C.J.
Greene
Adkins
McDonald
Watts
Hotten
Getty,

JJ.

Opinion by Adkins, J.

Filed: July 28, 2017

This case asks us to define the scope of a mandatory arbitration clause incorporated by reference into a web of construction contracts. It presents the question of whether a surety who issued a performance bond on a subcontract is bound by that contract's arbitration clause when the surety is jointly and severally liable for the "performance of" the subcontract and the entire subcontract is incorporated into the bond by reference.

## FACTS AND LEGAL PROCEEDINGS

In May 2009, Petitioner Schneider Electric Buildings Critical Systems, Inc. ("Schneider") entered into a contract with National Control Services, Inc. ("NCS"), an electrical subcontractor, for the "labor, material, equipment and services necessary to perform work in connection with construction projects, from time to time" ("Master Subcontract Agreement").[1] The Master Subcontract Agreement included the following mandatory arbitration clause, which provided that disputes between the contractor and subcontractor would be subject to arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association:

> 19.2 Disputes between Contractor and Subcontractor. In the event that the provisions for dispute resolution between the Contractor and its customer under the Contractor's Contract do not permit consolidation or joinder with disputes of third parties, such as the Subcontractor, or in the absence of a disputes resolution procedure in such Contract or if such dispute is only between the Contractor and Subcontractor, except for claims which have been waived by the making or acceptance of final payment and except for intellectual property issues which shall be settle[d] by litigation, then the

---

[1] At the time this contract was formed, Petitioner Schneider Electric Buildings Critical Systems, Inc. ("Schneider") was named TAC Critical Systems, Inc. ("TAC"). In July 2011, TAC changed its name to Schneider.

parties shall resolve the dispute following procedures set forth below.

19.2.1 Any dispute or controversy between the parties shall be submitted by one party to the other in writing and the parties shall attempt to resolve the dispute through good faith negotiations and settlement.

19.2.2 If the parties are unable to resolve the dispute through good faith negotiations and settlement, then the dispute shall be submitted to binding arbitration within thirty (30) days after demand for arbitration and conducted in the locale of the project before a single arbitrator, unless the parties mutually agree otherwise . . . .

That October, Schneider was hired by Clark Construction Group, LLC, to help construct a medical research facility at Aberdeen Proving Ground in Harford County, Maryland. Pursuant to the Master Subcontract Agreement, Schneider entered into a subcontract with NCS to perform work on that project ("NCS Subcontract"). The NCS Subcontract incorporated the entire Master Subcontract Agreement, including the arbitration clause, by reference. It also required NCS to furnish a performance bond for 100 percent of the NCS Subcontract value, which was $2,050,000. NCS obtained a performance bond ("the Bond") from Respondent Western Surety Company ("Western"). Referring to the NCS Subcontract, the Bond stated that the "Contractor and the Surety, jointly and severally, bind themselves . . . to the Owner for the performance of the Construction Contract, which is incorporated herein by reference." By incorporating the NCS Subcontract, the Bond also incorporated the Master Subcontract Agreement, including the arbitration clause.

2

During construction, a dispute arose between Schneider and NCS, and NCS abandoned the job site. After sending the required default notices, Schneider terminated the NCS Subcontract for refusal to perform the agreed-upon work. It claims approximately $1,500,000 in damages from this breach of contract. In February 2014, Schneider filed a demand for arbitration with NCS. Two months later, it amended the demand to include Western.

In April 2014, Western filed a petition in the Circuit Court for Howard County seeking a stay of arbitration pursuant to Maryland Code (1957, 2013 Repl. Vol.), § 3-208 of the Courts and Judicial Proceedings Article.[2] Western also requested that the court issue a declaratory judgment stating, in part, that Western was not bound by the arbitration

---

[2] Maryland Code (1957, 2013 Repl. Vol.), § 3-208 of the Courts and Judicial Proceedings Article ("CJP") provides:

> (a) *Petition to stay.* — If a party denies existence of the arbitration agreement, he may petition a court to stay commenced or threatened arbitration proceedings.

> (b) *Filing of petition.* — (1) A petition to stay arbitration shall be filed with the court where a petition to order arbitration has been filed.
> (2) If a petition for order to arbitrate has not been filed, the petition to stay arbitration may be filed in any court subject to venue provisions of Title 6 of this article.

> (c) *Determination of existence of arbitration agreement.* — If the court determines that existence of the arbitration agreement is in substantial and bona fide dispute, it shall try this issue promptly and order a stay if it finds for the petitioner. If the court finds for the adverse party, it shall order the parties to proceed with arbitration.

clause.  Schneider moved to dismiss the action for improper venue.  When Western agreed to a change of venue, the case was transferred to Harford County.

In the Circuit Court for Harford County, Western filed a motion for partial summary judgment asking the court to stay the arbitration proceedings.  In a memorandum opinion, the Circuit Court granted partial summary judgment in favor of Western, holding that it could not be compelled to participate in the pending arbitration proceedings between Schneider and NCS.  *Western Sur. Co. v. Schneider Elec. Bldgs. Critical Sys., Inc.*, No. 12-C-14-2396, slip op. at 12 (Cir. Ct. Harford Cty. Feb. 20, 2015).  It explained that the Bond "is only insuring that Western is liable for any construction that has *not* been performed, and the court can find no evidence of an intention that Western should be bound to dispute resolution provisions of the construction contract."  *Id.* at 8 (emphasis in original).  Schneider appealed.[3]

The Court of Special Appeals affirmed.  It held that "the 'joint and several' obligation clause in . . . the performance bond does not evince Western Surety's assent to be bound by the arbitration clause in the incorporated-by-reference chain of documents." *Schneider Elec. Bldgs. Critical Sys., Inc. v. Western Sur. Co.*, 231 Md. App. 27, 46 (2016). Additionally, the intermediate appellate court held that Western "is not compelled to arbitrate any dispute involving the performance bond it issued[ ] simply because that bond incorporated by reference an agreement, to which it was not a party, containing a

---

[3] Under Md. Code (1957, 2013 Repl. Vol.), CJP § 12-303(3)(ix), a party may appeal an interlocutory order "[g]ranting a petition to stay arbitration pursuant to § 3-208 of this article."

4

mandatory arbitration clause." *Id.* at 49. Schneider filed a petition for a writ of certiorari, which we granted.

Schneider presented the following question for our review:

> [Is] the surety on a performance bond issued for a subcontract [ ] bound by an arbitration clause set forth in the subcontract where the bond expressly incorporates, and states that the surety is jointly and severally bound for the performance of[ ] the subcontract?

Because we answer no to this question, we affirm the decision of the Court of Special Appeals.

## STANDARD OF REVIEW

Schneider appeals from the Circuit Court's grant of partial summary judgment. A court may grant summary judgment in favor of the moving party "if the motion and response show that there is no genuine dispute as to any material fact and that the party in whose favor judgment is entered is entitled to judgment as a matter of law." Md. Rule 2-501(f). Because the grant of summary judgment is a question of law, it is "subject to a non-deferential review on appeal." *Tyler v. City of Coll. Park*, 415 Md. 475, 498 (2010) (citations omitted). In conducting this *de novo* review, we evaluate "the record in the light most favorable to the non-moving party and construe any reasonable inferences that may be drawn from the well-plead facts against the moving party." *Id.* at 499 (citations omitted).

## DISCUSSION

Schneider contends that Western is bound by the NCS Subcontract's arbitration clause because (1) Western is jointly and severally liable "for the performance of the

5

Construction Contract," which includes the arbitration clause, and (2) the arbitration clause is incorporated into the Bond by reference. Additionally, it argues that the presumption in favor of arbitration under the Federal Arbitration Act ("FAA") requires us to compel Western to arbitrate. Western argues that the arbitration clause is not part of the "performance of the Construction Contract" and that its incorporation by reference does not bind Western. It contends that we should apply state contract law to interpret its obligations under the Bond. Without an enforceable arbitration clause between the parties, Western argues, the FAA is inapplicable. We first address the parties' contentions regarding the FAA.

### The Effect of the Federal Arbitration Act

Schneider argues that the FAA governs this case because the Bond "contains an agreement in writing providing for arbitration"—it incorporates the NCS Subcontract's arbitration clause by reference—and "evidences a transaction involving interstate commerce." Therefore, Schneider contends, we must apply a presumption in favor of arbitration. Western urges us to apply state contract law to determine whether an agreement to arbitrate exists between the parties.

The question before us is whether the Bond contains an agreement between Western and Schneider to arbitrate their disputes. The Supreme Court has explained, "When deciding whether the parties agreed to arbitrate a certain matter . . . courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). We have also recently held that "contract-based challenges to the enforcement of an arbitration

6

clause . . . are governed by applicable state law." *Cain v. Midland Funding, LLC*, 452 Md. 141, 154 (2017) (citation and internal quotation marks omitted). Accordingly, we apply Maryland law to determine whether Western has agreed to arbitrate its dispute with Schneider.

## Maryland Contract Law

In Maryland, the "fundamental rule in the construction and interpretation of contracts is that the intention of the parties as expressed in the language of the contract controls the analysis." *O'Brien & Gere Engs., Inc. v. City of Salisbury*, 447 Md. 394, 421 (2016) (citation omitted). Accordingly, if "the language of the contract is unambiguous, we give effect to its plain meaning and do not delve into what the parties may have subjectively intended." *Rourke v. Amchem Prod., Inc.*, 384 Md. 329, 354 (2004) (citation omitted). As to arbitration clauses in particular, we have explained, "Arbitration is a process whereby *parties voluntarily agree* to substitute a private tribunal for the public tribunal otherwise available to them." *Hartford Accident & Indem. Co. v. Scarlett Harbor Assocs.*, 346 Md. 122, 127 (1997) (emphasis in original) (alterations, internal quotation marks, and citations omitted). Accordingly, an arbitration clause "cannot impose obligations on persons who are not a party to it and do not agree to its terms." *Id.*

Here, we must interpret the Bond, which incorporates the NCS Subcontract by reference. The NCS Subcontract, in turn, incorporates the Master Subcontract Agreement. To determine the plain meaning of the Bond, we "construe the contract as a whole"—we do not read each clause or provision separately. *Owens-Illinois, Inc. v. Cook*, 386 Md. 468, 497 (2005) (citation omitted). Additionally, because "the contract comprises two or more

7

documents, the documents are to be construed together, harmoniously, so that, to the extent possible, all of the provisions can be given effect." *Rourke*, 384 Md. at 354.

The Bond's first paragraph provides: "The Contractor and the Surety, jointly and severally, bind themselves . . . to the Owner for the performance of the Construction Contract, which is incorporated herein by reference." Schneider argues that Western's liability for the "performance of the Construction Contract" makes Western "as much a party to the NCS Subcontract as NCS itself." Thus, Schneider claims, Western is bound by the arbitration clause. Western responds that its obligations under the Bond are only triggered if NCS fails to perform—it is not interchangeable with NCS in the NCS Subcontract. Accordingly, it contends, it is not bound by the arbitration clause.

We look at this paragraph in the context of the entire contract. The second paragraph provides: "If [NCS] **performs** the Construction Contract, [Western] and [NCS] shall have no obligation under this Bond . . . ." (Emphasis added.) And the third paragraph states:

> If there is no [default by Schneider], [Western's] obligation under this Bond shall arise after . . . [Schneider] has notified [NCS] and [Western] . . . that [Schneider] is considering declaring a [default by NCS] and has requested and attempted to arrange a conference with [NCS] and [Western] . . . to discuss **methods of performing the Construction Contract**. If [Schneider], [NCS,] and [Western] agree, [NCS] shall be allowed a reasonable time **to perform the Construction Contract** . . . .

(Emphasis added.) As the Court of Special Appeals aptly explained, the use of the term "perform" in these subsequent provisions "refers to the performance of the work [NCS] agreed to complete and not to every contractual provision in the incorporation-by-reference chain." *Schneider*, 231 Md. App. at 46. Viewing the disputed clause in context, we

8

conclude that Western's agreement to be jointly and severally liable "for the performance of the Construction Contract" does not constitute assent to the NCS Subcontract's mandatory arbitration clause.

Next, Schneider argues that Western is bound by the arbitration clause because it is incorporated by reference into the Bond. The relevant portions of the arbitration clause provide:

> 19.2  Disputes between Contractor and Subcontractor.  In the event that the provisions for dispute resolution between the Contractor and its customer under the Contractor's Contract do not permit consolidation or joinder with disputes of third parties, such as the Subcontractor, or in the absence of a disputes resolution procedure in such Contract, **or if such dispute is only between the Contractor and Subcontractor,** . . . then the parties shall resolve the dispute following procedures set forth below.
>
> ***
>
> 19.2.2  If **the parties** are unable to resolve the dispute through good faith negotiations and settlement, then the dispute shall be submitted to binding arbitration within thirty (30) days after demand for arbitration . . . .

(Emphasis added.)  The language within the clause unambiguously limits its application to disputes between Schneider and NCS.  This section of the Master Subcontract Agreement is explicitly labeled "Disputes between Contractor and Subcontractor."  The clause specifically uses the terms "Contractor," "Subcontractor," and "parties."  An earlier provision within the contract defines "Contractor" as Schneider and "Subcontractor" as NCS.  "Parties" is defined as "Contractor" and "Subcontractor."  Moreover, the term

9

"surety" is used in other provisions of the Master Subcontract Agreement—"surety" and "Subcontractor" were clearly not intended to be interchangeable.

In *Scarlett Harbor*, we held that a surety company could not compel a condominium developer to arbitrate their dispute under the mandatory arbitration clause in the subcontract between the developer and its contractor.[4] 346 Md. at 129–30. Like this case, the surety's performance bond incorporated the subcontract by reference. *Id.* at 125. The arbitration clause at issue in *Scarlett Harbor* similarly referred explicitly to the parties to the contract. It provided for arbitration of "all claims, disputes and other matters in question between the Contractor and the Owner arising out of or relating to the Contract Documents or the breach thereof." *Id.* at 124 (alteration omitted). We explained, "By incorporating into the bond . . . the contract that contains [the owner's] promise to arbitrate with [the contractor], [the surety] literally has incorporated as to [the owner] only [the owner's] promise to arbitrate with [the contractor.]" *Id.* at 129. Accordingly, we held that the owner had not agreed to arbitrate with the surety. *Id.* at 130. This logic also applies here. By incorporating the arbitration clause by reference, Western has agreed to insure

---

[4] Schneider argues that *Hartford Accident & Indemnity Co. v. Scarlett Harbor Associates*, 346 Md. 122 (1997), does not dictate the outcome of this case because there, the surety was seeking to enforce the arbitration clause against the obligee—not the other way around. It points to a *Scarlett Harbor* footnote, in which the Court stated, "By drafting the bond to incorporate, and not simply refer to, the [subcontract], [the surety's] conduct might be construed as a continuing offer to the obligee to arbitrate claims on the bond. That is not the issue before us, and we express no opinion thereon." *Id.* at 129 n.7. We agree with Schneider that *Scarlett Harbor* is not dispositive—we explicitly declined to rule on the issue facing us now—but its analysis provides guidance for the case at hand.

NCS's promise to arbitrate any dispute it has with Schneider. We should not alter the language of that promise to include Western.

Recently, the U.S. District Court for the District of Columbia held that Western was not obliged to arbitrate its dispute with an owner under a similar arbitration clause incorporated in a performance bond by reference. In *Western Surety Co. v. U.S. Engineering Co.*, 211 F. Supp. 3d 302 (D.D.C. 2016), the court reasoned that because the subcontract mandated arbitration for "[a]ny controversy or claim of Contractor against Subcontractor or Subcontractor against Contractor," "only those two parties are bound by the arbitration agreement." *Id.* at 304, 309. The court explained that extending the arbitration clause to govern disputes with the surety "would render the phrase 'Contractor against Subcontractor or Subcontractor against Contractor' superfluous." *Id.* at 309. Likewise, holding that Western is bound by the NCS Subcontract's arbitration clause would impermissibly disregard its limiting language. *See Towson Univ. v. Conte*, 384 Md. 68, 81 (2004) ("courts do not interpret contracts in a manner that would render provisions superfluous or as having no effect").

Furthermore, a clause within the Bond providing for legal remedy demonstrates the parties' intent to litigate disputes arising under the Bond, not arbitrate them. The Bond's court action clause provides:

> Any proceeding, legal or equitable, under this Bond **may** be instituted in any court of competent jurisdiction in the location in which the work or part of the work is located and shall be instituted within two years after the Contractor ceased working or within two years after the Surety refuses or fails to perform its obligations under this Bond, whichever occurs first.

(Emphasis added.)  Schneider claims that we can read this clause in harmony with the arbitration clause.  It contends that the Bond, with the arbitration clause incorporated, gives Schneider the option of bringing claims through arbitration or through the courts.

But the language of the arbitration clause belies Schneider's claim.  It states that if "the parties" are unable to resolve their dispute through negotiations, "the dispute **shall** be submitted to binding arbitration within thirty (30) days after demand for arbitration . . . unless the parties mutually agree otherwise." (Emphasis added.)  Western was a surety, not a party.  If the arbitration clause binds Western, as Schneider contends, neither Western nor Schneider could unilaterally decide to litigate a dispute between them—they would be forced to arbitrate.  Such interpretation would flatly contradict the Bond's court action clause, which expressly permits litigation.  We decline to construe the Bond in a manner that nullifies one of its provisions.  *See Walker v. Dep't of Human Res.*, 379 Md. 407, 421 (2004) (citations omitted) (explaining that we interpret a contract so that, if possible, all of its provisions "may be given effect").

We find support for our holding in *Liberty Mutual Insurance Co. v. Mandaree Public School District #36*, 503 F.3d 709 (8th Cir. 2007), in which the U.S. Court of Appeals for the Eighth Circuit held that a surety was not bound by an arbitration clause that governed disputes between the School District and its contractor.[5]  *Id.* at 711.  Like the

_____

[5] Schneider urges us to look to federal case law holding that a surety is bound by an arbitration clause in a subcontract incorporated by reference.  But many of those cases are factually distinguishable from the case at hand.  In some, the arbitration clause at issue did not refer to the particular parties to the subcontract.  *Commercial Union Ins. Co. v. Gilbane Bldg. Co.*, 992 F.2d 386, 388 (1st Cir. 1993); *Tower Ins. Co. of New York v. Davis/Gilford*, 967 F. Supp. 2d 72, 75 (D.D.C. 2013); *Cianbro Corp. v. Empresa Nacional de Ingenieria*

12

case at hand, the arbitration clause "provided that disputes between [the School District] and . . . [the] contractor would be resolved by arbitration." *Id.* at 710. The surety's performance bond "incorporated the construction contract by reference" and included a court action clause identical to the one at issue here. *Id.* The Eighth Circuit reasoned that the court action clause "contemplat[ed] that disputes [would] be resolved in court" and held that "the incorporation clause in the performance bond at issue in this dispute does not mandate the surety to arbitrate."[6] *Id.* at 711 (citation omitted).

---

*y Technologia*, 697 F. Supp. 15, 16 (D. Me. 1988). In others, the arbitration clause governed any claim **related to** the construction contract, not only disputes between the contract's parties. *Exch. Mut. Ins. Co. v. Haskell Co.*, 742 F.2d 274, 275 (6th Cir. 1984); *Transamerica Premier Ins. Co. v. Collins & Co. Gen. Contrs. Inc.*, 735 F. Supp. 1050, 1050 (N.D. Ga. 1990); *U.S. Surety Co. v. Hanover R.S. Ltd. P'ship*, 543 F. Supp. 2d 492, 493 (W.D.N.C. 2008). As we acknowledged in *Scarlett Harbor*, in many of these cases, the analysis "does not go beyond the fact that the contract containing an arbitration provision has been incorporated into the bond." 346 Md. at 129 n.7 (citing *U.S. Fid. & Guar. Co. v. West Point Constr. Co.*, 837 F.2d 1507 (11th Cir. 1988); *Haskell Co.*, 742 F.2d at 275–76) (additional citations omitted). Insofar as the remaining case Schneider points to is factually analogous, we disagree with the reasoning therein. *See Hoffman v. Fid. & Deposit Co. of Md.*, 734 F. Supp. 192 (D.N.J. 1990).

[6] In *Developers Surety and Indemnity Co. v. Resurrection Baptist Church*, 759 F. Supp. 2d 665 (D. Md. 2010), the U.S. District Court for the District of Maryland contrasted the court action clause in *Liberty Mutual Insurance Co. v. Mandaree Public School District #36*, 503 F.3d 709 (8th Cir. 2007), with the language used in the *Developers Surety* bond. *Id.* at 672. The *Developers Surety* bond provided that "any suit under this bond *must* be instituted before the expiration of two (2) years from the date on which final payment under the Contract falls due." *Id.* (emphasis in original) (alteration omitted). The court explained that unlike the *Mandaree* court action clause, which used the term "may," the provision at issue "expresses a limitation on the right to bring suit under the bond, not an affirmation of a party's right to sue." *Id.*

**CONCLUSION**

We hold that the arbitration clause, as incorporated by reference into the Bond, does not compel Western to arbitrate its dispute with Schneider. Thus, the trial court properly granted partial summary judgment as to this issue. Accordingly, we affirm the Court of Special Appeals.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS TO BE PAID BY PETITIONER.**