**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 20-2302

MICHAEL COADY; CHARLES JENKINS; LAWRENCE HOLMES; WILLIAM
FREBURGER; RUSSELL J. MACEY, JR.,

Plaintiffs – Appellees,

v.

NATIONWIDE MOTOR SALES CORP., d/b/a Nationwide Infiniti of Timonium,
d/b/a Nationwide Kia, d/b/a Nationwide Nissan, d/b/a Nationwide Motor Sales, a/k/a
Nationwide Pre-Owned; WILLIAM H. SCHAEFER, JR.; BRANDON E.
SCHAEFER,

Defendants – Appellants.

Appeal from the United States District Court for the District of Maryland, at Baltimore.
Stephanie A. Gallagher, District Judge.  (1:20-cv-01142-SAG)

Argued:  September 23, 2021                          Decided:  April 25, 2022

Before WYNN, THACKER, and RUSHING, Circuit Judges.

Affirmed by published opinion.  Judge Rushing wrote the opinion, in which Judge Wynn
and Judge Thacker joined.

**ARGUED:**  William James Murphy, ZUCKERMAN SPAEDER, LLP, Baltimore,
Maryland, for Appellants.  Brian Joseph Markovitz, JOSEPH, GREENWALD & LAAKE,
P.A., Greenbelt, Maryland, for Appellees.  **ON BRIEF:**  Robert M. Gittins, ECCLESTON
& WOLF, PC, Hanover, Maryland; John J. Connolly, Alicia Shelton, ZUCKERMAN
SPAEDER LLP, Baltimore, Maryland, for Appellants.  Nicholas N. Bernard, JOSEPH,

GREENWALD & LAAKE, P.A., Greenbelt, Maryland; Jonathan Rudnick, THE LAW OFFICE OF JONATHAN RUDNICK LLC, Tinton Falls, New Jersey, for Appellees.

RUSHING, Circuit Judge:

In this case, we are asked to determine whether a valid arbitration agreement exists between an employer and certain employees. Applying Maryland law, we conclude that the promise to arbitrate was illusory because, on the agreement's signature page, the employer retained the right to amend or abolish the agreement without notice to the employees. We therefore affirm the district court's denial of the motion to compel arbitration.

I.

Former employees of Nationwide Motor Sales Corporation sued the company and its owners (collectively, Nationwide) in district court, alleging fraudulent payment practices that reduced employees' sales commissions and final paychecks. Nationwide moved to compel arbitration and to dismiss or stay the proceedings. In support, Nationwide produced its Employee Handbook, which contains a section entitled "Agreement to Submit All Employment Disputes to Arbitration." J.A. 136. The first four paragraphs of the Arbitration Agreement state an intention to arbitrate employment related claims and specify the rules and procedures that shall apply. The fifth and final paragraph of the Arbitration Agreement says: "**By my signature on the 'Employee Handbook and Operating Procedures' Acknowledgement Receipt, I confirm that I have read and understand each of the four sections set forth above in this Agreement**." J.A. 136. The referenced Acknowledgement Receipt provides in full:

> I, the undersigned (Employee), acknowledge[] receipt of the (Employer) "Employee Handbook and Dealer Operating Procedures" written publication **and** have read and understood all sections therein and specially:

3

- "No Harassment" Policy/Procedure;
- Agreement to Submit All Employee Disputes to Arbitration;
- Demonstrator Agreement;
- Acknowledgement of Training and Agreement to Abide by the Company Telemarketing Policy[;]
- Acknowledgement of Agreement to Comply with Information Security Program[;]
- Large Cash Transactions[.]

I further acknowledge my obligation to read and comprehend its contents. I understand that this handbook is intended as an employee reference source regarding personnel policies, procedures and company benefits of the employer, but may not represent all such policies currently in effect. *I further understand that the employer has the right, from time to time, to make and enforce new policies or procedures and to enforce, change, abolish or modify existing policies, procedures or benefits applicable to employees as it may deem necessary with or without notice.* I also understand that my employment is terminable-at-will, that I am not being employed for any specified time, and this handbook is not intended to and does not create a contract of employment. As a condition of my employment, I agree to conform to any such policy, rule, or regulations, whether currently in effect or established in the future.

J.A. 168 (italics added). Directly below this paragraph are lines for the employee and the manager to sign the Acknowledgement Receipt.

In opposition to Nationwide's motion to compel arbitration, the employees argued that the Arbitration Agreement is invalid. As relevant here, they asserted that the Agreement is an illusory promise because—as shown in the italicized Modification Clause above—Nationwide retains the right to change, abolish, or modify the Handbook's policies, procedures, and benefits. Nationwide replied that the Modification Clause does not apply to the Arbitration Agreement because it is located outside the "four corners" of the Agreement and, in any event, the Clause references only policies, procedures, and benefits but not "agreements."

4

The district court denied Nationwide's motion, finding the Arbitration Agreement illusory due to the Modification Clause. *See Coady v. Nationwide Motor Sales Corp.*, No. SAG-20-1142, 2020 WL 6785352, at *6 (D. Md. Nov. 18, 2020). We now possess jurisdiction over Nationwide's timely interlocutory appeal. *See* 9 U.S.C. § 16; *Rota-McLarty v. Santander Consumer USA, Inc.*, 700 F.3d 690, 696 (4th Cir. 2012). Because this appeal raises a matter of contract interpretation, we review the district court's denial of Nationwide's motion to compel arbitration de novo. *See Rota-McLarty*, 700 F.3d at 699; *Noohi v. Toll Bros., Inc.*, 708 F.3d 599, 602 (4th Cir. 2013).

II.

"Arbitration is a matter of contract." *Mey v. DIRECTV, LLC*, 971 F.3d 284, 288 (4th Cir. 2020). Before we may enforce the Arbitration Agreement, we must be satisfied that a valid agreement exists. The presumption favoring arbitration does not apply to this preliminary question of the Arbitration Agreement's validity. *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 302–303 (2010); *Noohi*, 708 F.3d at 611 n.6. We resolve this question according to state-law principles of contract formation and interpretation. *Rota-McLarty*, 700 F.3d at 699. The parties agree that Maryland law applies.

"In construing contracts, Maryland follows the objective interpretation principle. If the language of the contract is unambiguous, [courts] give effect to its plain meaning and do not delve into what the parties may have subjectively intended." *Rourke v. Amchem Prods., Inc.*, 863 A.2d 926, 941 (Md. 2004); *see Credible Behav. Health, Inc. v. Johnson*, 220 A.3d 303, 310 (Md. 2019). "Therefore, only the intention of the parties as expressed in the language of the contract controls the analysis." *Cain v. Midland Funding, LLC*, 156

5

A.3d 807, 815 (Md. 2017) (internal quotation marks omitted). "To determine the plain meaning of [a contract]," Maryland courts "construe the contract as a whole" and decline to "read each clause or provision separately." *Schneider Elec. Bldgs. Critical Sys., Inc. v. W. Sur. Co.*, 165 A.3d 485, 490 (Md. 2017) (internal quotation marks omitted). Where a "contract comprises two or more documents, the documents are to be construed together, harmoniously, so that, to the extent possible, all of the provisions can be given effect." *Id.* (internal quotation marks omitted).

A.

We first must determine whether the Acknowledgment Receipt is part of the Arbitration Agreement and should be considered with it when interpreting the Agreement. Because an arbitration provision is "an independently enforceable contract" that is "a severable part" of the larger agreement in which it appears, Maryland courts do not look beyond an arbitration provision "into the underlying employment agreement to determine whether consideration exists to support an agreement to arbitrate." *Cheek v. United Healthcare of Mid-Atl., Inc.*, 835 A.2d 656, 664–665 (Md. 2003) (internal quotation marks omitted); *see Noohi*, 708 F.3d at 612 (acknowledging that *Cheek*'s rule requiring mutuality within the arbitration clause itself "gives us pause," but ultimately rejecting the argument that it imposes a requirement on arbitration clauses that does not apply to other contracts). We may examine "only the language of the arbitration agreement itself." *Hill v. Peoplesoft USA, Inc.*, 412 F.3d 540, 543 (4th Cir. 2005).

We conclude that the Acknowledgement Receipt is part of the Arbitration Agreement. The fifth paragraph of the Arbitration Agreement incorporates the Receipt,

6

stating that an employee's "signature on the 'Employee Handbook and Operating Procedures' Acknowledgement Receipt . . . confirm[s] that [he] ha[s] read and understand[s] each of the four sections set forth above in this Agreement." J.A. 136 (boldface removed). In operation, an employee signs the Receipt to assent to the Agreement. The Receipt itself also specifically identifies the Arbitration Agreement as one of the Handbook sections to which the Receipt "specially" applies. J.A. 168. The Receipt therefore must be read in conjunction with the Arbitration Agreement. *See Schneider*, 165 A.3d at 490.

Nationwide resists this conclusion, citing *Hill* for the proposition that we may not look outside the "four corners" of the Arbitration Agreement to consider the Receipt. 412 F.3d at 544. *Hill* involved a freestanding, "comprehensive six-page" arbitration agreement "signed by the parties." *Id.* at 542. Nothing within the agreement allowed the employer to modify it. A separate company policy, which the parties did not sign, explained the employer's "Internal Dispute Solution" program, of which arbitration was the third step. The employer reserved the right to unilaterally change that program. Applying Maryland law, this Court held that it could not consider the modification provision of the Internal Dispute Solution program but instead must "confine[] its analysis" to "the separate Arbitration Agreement, signed by the parties, to determine whether the agreement was supported by consideration." *Id.* at 543–544.

Our decision is fully consistent with *Hill*. Here, the "language of the arbitration agreement itself" incorporates the Acknowledgment Receipt in its fifth paragraph. *Id.* at 543. And, unlike *Hill*, where the arbitration agreement was signed by the parties, the

7

Receipt here serves as the signature page for the Arbitration Agreement. It is therefore appropriate for us to consider the Receipt when evaluating the Arbitration Agreement.

B.

We now must consider whether the Modification Clause of the Acknowledgement Receipt renders the Arbitration Agreement illusory and invalid. Under Maryland law, a promise to arbitrate is illusory—and thus cannot constitute the consideration necessary to support a binding contract—if the employer reserves the right "to alter, amend, modify, or revoke the Arbitration Policy . . . at any time with or without notice." *Cheek*, 835 A.2d at 662 (internal quotations marks and brackets omitted). The Modification Clause here reserves Nationwide's ability to "change, abolish or modify existing policies, procedures or benefits applicable to employees as it may deem necessary with or without notice." J.A. 168. The parties agree that, if the Modification Clause applies to the Arbitration Agreement, the Agreement is illusory. Nationwide argues that the Clause does not apply because it refers only to "policies, procedures or benefits," not "agreements."

Considering the plain meaning of the Acknowledgement Receipt "as a whole," the Modification Clause applies to the Arbitration Agreement. *Schneider*, 165 A.3d at 490 (internal quotation marks omitted). As an initial matter, the Arbitration Agreement and five other sections of the Handbook are specifically listed in the Receipt immediately above the paragraph containing the Clause. Further, the Receipt states that the Handbook is a "reference source regarding personnel policies, procedures and company benefits," the very things Nationwide then retains the right to modify. J.A. 168. The Receipt refers to the contents of the Handbook collectively, without excepting "agreements," and we see no

8

reason to interpret the Modification Clause differently. The Handbook does not, for example, title each of its provisions as a "policy," "procedure," "benefit," or "agreement"—most provisions are labeled only by topic, such as "Large Cash Transactions." J.A. 168. Nationwide's argument therefore places more weight on supposed distinctions among those labels than the plain language of the Receipt will support. The better reading of the Receipt is that "personnel policies, procedures and company benefits" encompasses all sections of the Handbook, including those "specially" acknowledged in the Receipt like the Arbitration Agreement. J.A. 168. Because the Modification Clause gives Nationwide the right to change or abolish those policies, procedures, and benefits without notice, the Arbitration Agreement is illusory under Maryland law. *See Cheek*, 835 A.2d at 662.

## III.

The district court did not err in considering the Acknowledgement Receipt when evaluating the validity of the Arbitration Agreement, because the Agreement incorporated the Receipt by expressly requiring an employee to sign it as part of the Agreement. Nor did the district court err in concluding that the plain language of the Receipt's Modification Clause applied to the Agreement, rendering its promise to arbitrate illusory and unenforceable under Maryland law. We therefore affirm the district court's denial of Nationwide's motion to compel arbitration.

*AFFIRMED*